COMMONWEALTH of Pennsylvania,
Appellee,

v.

James GRIFFIN, Appellant.

Superior Court of Pennsylvania.

Submitted June 26, 2001.
Filed Oct. 15, 2001.

2. It may be that the Superior Court's decision to rely upon different grounds reflected some level of discomfort with the trial court's reasoning. Indeed, the trial court's own opinion in support of its order reflects some degree of uncertainty as to the propriety of the order denying counsel fees, as it indicates that Barqawi "either had no duty to defend Atlantic as of the filing or that its duty ceased as of the grant of Summary Judgment."

502

Andrew G. Gay, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Commonwealth, appellee.

Before: HUDOCK, STEVENS, and POPOVICH, JJ.

STEVENS, J.

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of Possession with Intent to Deliver[1] and Criminal Conspiracy.[2] Herein, Appellant alleges that the trial court erred in refusing to suppress evidence obtained during a search incident to his warrantless arrest, a subsequent residential search pursuant to a warrant, and an inventory search of his vehicle. We affirm.

¶ 2 Philadelphia Police arrested Appellant for his alleged involvement in the sale of crack cocaine to an undercover officer. Specifically, the record shows that, on the night of September 13, 1999, officers from the Narcotics Field Unit participated in a drug surveillance and attempted buy in the 5500 block of Beaumont Street in Philadelphia. Undercover officer Bradford Mitchell sought to purchase a quarter ounce of crack cocaine at 5503 Beaumont, where he had before purchased a similar amount. From his unmarked car, Officer Mitchell summoned one Antoinette Simmons, who was sitting on the steps of 5503 Beaumont. He told her he needed to buy "another quarter," so she walked to 5503 Beaumont and entered the apartment house briefly, returning outside with Appellant and one Darnell Thomas. Officer Mitchell saw the three confer on the apartment steps for a short time and then watched Appellant leave the scene driving in a gray Oldsmobile with Thomas riding passenger. Simmons approached Officer Mitchell's car and told him that the two men would be right back. N.T. 5/4/00 at 4–9.

¶ 3 Appellant and Thomas returned ten minutes later and parked two car lengths away from Mitchell. Still seated in his car, Officer Mitchell observed Thomas exit the Oldsmobile and hand a clear plastic bag to Simmons on the steps of 5503 Beaumont. N.T. at 10. Simmons walked over to Mitchell and gave him the baggie in exchange for $225.00 in what was, in fact, prerecorded buy money. Simmons went back to the steps of 5503 Beaumont and

---

1. 18 Pa.C.S.A. § 903.

2. 35 P.S. § 780–113(a)(30).

handed the money to Thomas, with Appellant at his side. At that point, Officer Mitchell drove away and radioed back-up members of the Narcotics Unit, parked one block away, that he had completed the buy outside of 5503 Beaumont.

¶ 4 Back-up Officers Sean Kelly and Brian Reynolds responded minutes later by driving to 5503 Beaumont and locating the three suspects, who retreated into the apartment house upon seeing the officers. Officer Kelly observed Appellant take a black handgun from his waistband at this time, and, moments later during a knock and announce, could see through the front door window Appellant placing the handgun underneath a sofa cushion on which he sat. N.T. at 27–29. Without a warrant, Officer Kelly then entered the apartment and handcuffed Appellant at the sofa, recovered the loaded handgun from under the cushion, and handcuffed Thomas, who was also sitting on the sofa. N.T. at 36.

¶ 5 A weapons pat down of the three suspects uncovered $200 of buy money from Thomas and $25 from Simmons. The officers then secured the apartment in anticipation of a search warrant, which Officer Reynolds would execute several hours later to find pagers and a number of black-tinted plastic packets in the living room. N.T. at 43. The weapons pat down of Appellant also produced car keys, which Officer Reynolds used to transport the Oldsmobile to police headquarters. A subsequent inventory search of the Oldsmobile revealed in the trunk a clear Zip-lock baggie containing many smaller colored packets commonly used to package narcotics. N.T. at 45–46. Based on these events, Appellant and Thomas were charged with committing, *inter alia,* the above-mentioned crimes.

¶ 6 Before his trial, Appellant, through counsel, filed a motion to suppress physical evidence seized at the site of his arrest.

The trial court denied Appellant's motion at the conclusion of a May 4, 2000, hearing on the matter, and Appellant's case proceeded to jury trial, where, on May 9, 2000, he was convicted on both charges. For his crimes, Appellant received a sentence of two to four years' incarceration on the charge of Possession with Intent to Deliver, and a consecutive sentence of ten years' probation on the charge of conspiracy. Thereafter, the court denied Appellant's post-sentence motions, and Appellant filed the present timely direct appeal.

¶ 7 Notified of the appeal, the trial court ordered Appellant to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925(b). Appellant complied with the court's order, indicating in his statement that he intended to raise a challenge to the denial of his pretrial motion to suppress. For reasons unknown, however, the trial court filed a Pa.R.A.P. 1925(a) opinion stating that Appellant waived any issues he would raise before this Court for failure to file a 1925(b) statement.

¶ 8 Though we are thus without a 1925(a) opinion that addresses Appellant's present challenge, our review of the record—in particular, the notes of testimony from the suppression hearing—adequately apprise this Court of the trial court's particular reasons for denying Appellant's motion to suppress. Accordingly, in light of such sufficient guidance, we decline to remand for the preparation of a 1925(a) opinion and proceed to review the merits of Appellant's claims. *See Gibbs v. Herman,* 714 A.2d 432 (Pa.Super.1998) (finding remand for compliance with Pa.R.A.P.1925(a) unnecessary where the absence of a trial court opinion will not affect this Court's review).

When we review the ruling of a suppression court, we must determine whether its factual findings are supported by the

record. Where the [appellant] challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from those facts are erroneous.

*Commonwealth v. Roman,* 714 A.2d 440, 442 (Pa.Super.1998). Moreover as factfinder, it is within the suppression court's sole province to pass on the credibility of witnesses and the weight to be accorded their testimony. *Commonwealth v. Benton,* 440 Pa.Super. 441, 655 A.2d 1030 (1995). The factfinder is free to believe all, some, or none of the evidence presented. *Id.*

▊▊▊ ¶ 9 Appellant first claims that the trial court erred in failing to suppress the gun and packets seized from 5503 Beaumont. Without the requisite exigent circumstances necessary for a warrantless entry into the premises, Appellant contends, Officer Kelly's seizure of the gun from under the sofa cushion was unconstitutional. In addition, because evidence obtained from the unconstitutional warrantless entry served as the basis for the issuance of the search warrant, Appellant argues, the search warrant itself was tainted such that the packets obtained pursuant to the warrant should have been suppressed.[3] After a thorough review of the record, we conclude that exigent circumstances permitted the police to enter 5503 Beaumont, seize Appellant's gun, and secure the premises pending a search warrant.

▊▊▊ ¶ 10 Absent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists. *Commonwealth v. Santiago,* 736 A.2d 624 (Pa.Super.1999).

It is well-settled that exigent circumstances excusing the warrant requirement arise where the need for prompt police action is imperative. Exigent circumstances can be generated when evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger to his person by checking for concealed weapons. Whether exigent circumstances exist depends on 'an examination of all of the surrounding circumstances in a particular case.'

*Commonwealth v. Peterson,* 408 Pa.Super. 22, 596 A.2d 172, 179 (1991) *quoting Commonwealth v. Hinkson,* 315 Pa.Super. 23, 461 A.2d 616, 618 (1983).

In determining whether exigent circumstances exist, a number of factors are to be considered. Among the factors to be considered are: (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is a strong reason to believe that the suspect is within the premises to be entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

---

3. Contrary to the Commonwealth's assertion, Appellant contested the officers' warrantless entry into 5503 Beaumont at the suppression hearing and, therefore, has preserved the issue for our review. *See* N.T. at 50–55.

*Commonwealth v. Roland,* 535 Pa. 595, 599, 637 A.2d 269, 270–71 (1994). Other factors may also merit consideration, such as whether there is a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling. *Id.*

¶ 11 Applying these considerations to the present case, we regard the police entry into Appellant's apartment as proper. Officers Kelly and Reynolds arrived at 5503 Beaumont with ample information amounting to probable cause that recent drug-related activity at 5503 Beaumont was felonious in nature.[4] Moreover, Appellant immediately withdrew indoors upon police arrival and displayed a handgun during his retreat. Thus, it is significant that it was Appellant who necessitated a pursuit to prevent the potential destruction of evidence related to the suspected drug distribution[5] and who made the prospect of securing the house pending a warrant too dangerous given the cover that nightfall could have given the armed conspirators.

¶ 12 We find it additionally noteworthy that the officers were restrained in their pursuit by knocking and announcing their presence at the front door, entering only when clearly seeing that Appellant, preoccupied with hiding his gun, would not admit them. Accordingly, we conclude that exigent circumstances prompted immediate police action and necessitated the officers' entry into the premises to arrest Appellant and Thomas.

■■■■ ¶ 13 We likewise find that Officer Kelly's warrantless seizure of the gun from within the sofa was part of a proper search incident to a lawful arrest. The Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution bars "unreasonable searches and seizures." However, an arresting officer may, without a warrant, search a person validly arrested if the search is substantially contemporaneous with the arrest and confined to the immediate vicinity of the arrest. *Commonwealth v. Wright,* 560 Pa. 34, 742 A.2d 661 (1999). Officer Kelly gave unrebutted testimony that he seized the gun immediately after handcuffing Appellant but before Thomas, who was sitting on the sofa where the gun lay, had been secured. N.T. at 36–37. Contemporaneous with, and immediately proximate to, the lawful arrest of Appellant and Thomas, therefore, the seizure of the handgun was lawful and not subject to suppression.

■■■■ ¶ 14 Appellant next challenges the admission of evidence recovered during the execution of the search warrant for 5503 Beaumont several hours after the arrest. Initially, we find Appellant may not now contend as he does that the Commonwealth produced insufficient evidence that officers performed the search pursuant to a warrant, since he conceded the existence of the warrant at the suppression hearing. *See Commonwealth v. Reeves,* 778 A.2d 691, 692, 2001 Pa.Super. Lexis 647, at *3 (Pa.Super. June 5, 2001), (noting that issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Indeed, at the suppression hearing, Appellant challenged the validity of the search warrant itself only to the extent that the magistrate allegedly

---

4. On essentially the same information, a jury convicted Appellant of two felonies, including a first-degree felony criminal conspiracy charge.

5. That Appellant and Thomas drove to another location presumably to acquire the crack cocaine does not negate the likelihood that Appellant's apartment contained paraphernalia and other items and information connected to the drug distribution conspiracy.

issued it based on evidence wrongfully obtained during Appellant's arrest. N.T. at 3, 50–54. Having already found nothing improper with the search incident to arrest, we reject Appellant's argument that such search could not, in part, lay the foundation for the issuance of a search warrant.

¶ 15 Finally, Appellant alleges error with the trial court's refusal to suppress evidence from the trunk of the Oldsmobile during an inventory search of the car. Specifically, Appellant argues that the Commonwealth was required to obtain a search warrant prior to seizing and searching the car. However, we fail to see any portion of the suppression hearing wherein Appellant contested the search of the vehicle, and, accordingly, find such issue waived. *See Reeves, supra.*

¶ 16 Thus finding no merit to any issues raised in Appellant's appeal, we affirm the judgment of sentence entered below.

¶ 17 Judgment of Sentence affirmed.

¶ 18 HUDOCK, J., concurs in the result.