J-S19040-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| CHRISTOPHER ARTIS | : | |
| | : | |
| Appellant | : | |
| | : | No. 1769 EDA 2017 |

Appeal from the Judgment of Sentence May 4, 2017
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0004597-2014

BEFORE: SHOGAN, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                                        **FILED JUNE 21, 2018**

Appellant, Christopher Artis, appeals from the judgment of sentence imposed on May 4, 2017, following his jury trial conviction of two counts of aggravated assault, and one count each of robbery, conspiracy to commit robbery, and firearms not to be carried without a license.[1]  Specifically, he challenges the trial court's denial of his motion to suppress the firearm, and the court's admission of recordings of prison phone calls by co-defendant Frank Artis, Sr., Appellant's father.  We affirm.

We take the factual and procedural history in this matter from our review of the certified record and the trial court's August 22, 2017 opinion.

> On August 21, 2012, at approximately 9:30[ ]pm, Patrol Officer Jonathan Nicholas Cooney . . . of the Whitemarsh Township Police Department responded to a call of shots fired at 4136

---

[1] 18 Pa.C.S.A. §§ 2702(a), 3701(a), 903, and 6106(a), respectively.

---

\* Retired Senior Judge assigned to the Superior Court.

Joshua Road, Lafayette Hill, Pennsylvania. Upon arrival, Officer Cooney and his colleagues located the victim, Donald Clarke[,] suffering from gunshot wounds. Clarke had been the victim of an attempted robbery gone astray, involving two suspects. In addition to collecting several .38 caliber shell casings, responding officers also retrieved a baseball cap from Clarke's driveway, left behind by one of the suspects. Ultimately, on June 18, 2013, authorities received the results of DNA testing of samples collected from the baseball hat found at the crime scene which identified Frank Artis, Sr., as one of the suspected attackers. In addition, Clarke's description of one of his attackers matched that of Frank Artis, Sr. On July 26, 2013, police arrested Frank Artis, Sr., and interviewed him, but he refused to identify the other suspect. . . .

Further investigation revealed Frank Artis, Sr. had two sons including [Appellant]. Approximately five months after Clarke was shot, [Appellant] was the victim of a shooting that occurred on January 7, 2013. Evidence gathered during the investigation of [Appellant's] January 7th shooting ultimately resulted in his arrest in the instant case for the attempted robbery and shooting of Clarke on August 21, 2012, along with that of his co-[d]efendant father, Frank Artis, Sr.

(Trial Court Opinion, 8/22/17, at 1-2) (footnotes omitted).

Appellant filed a motion to suppress evidence obtained during the investigation of the January 7, 2013 shooting. On September 12 and 13, 2016, the court conducted a suppression hearing. After the hearing, the court denied the suppression motion, making the following findings of fact.

The court fully credits the testimony of Sergeant [Wali] Shabazz during the September 12, 2016 hearing[,] and during today's resumed hearing. Sergeant Shabazz testified that he has been a police officer for 17 years and a sergeant for almost 7 years, and that he has investigated approximately 500 shootings over the course of his career.

Sergeant Shabazz testified that on the night of January 7, 2013, he was on duty when he proceeded to 3944 North 8th Street after receiving a radio call of a shooting and a man with a gun. Sergeant Shabazz was the first officer on the scene and saw a

man lying on the ground in front of the residence with an apparent gunshot wound to the head. This man appeared to be so gravely injured that the sergeant believed that he had been killed. The wounded man—subsequently identified as [Appellant]—was being cradled in the arms of a woman identified as [Appellant's] mother.

Other officers arrived on the scene and Sergeant Shabazz directed that the wounded man be taken to the hospital, with his mother accompanying him. In securing the crime scene, the sergeant noted numerous bullet strike marks on the front of the residence at 3944 North 8th Street, which the sergeant described as appearing to have been "shot up." The sergeant testified that he was concerned—given that bullets can easily pass through windows and walls—that there might be additional injured individuals inside the residence. Sergeant Shabazz was also concerned that there could be a shooter or shooters inside the residence. The sergeant thus made the decision—in the interest of protecting the public and the officers who were securing the crime scene—to immediately enter the residence to determine if anyone was inside who either needed assistance[,] or who posed a threat. Accordingly, Sergeant Shabazz approached [Appellant's] mother before she left for the hospital, telling her that he was going to do a "walk through" of the residence. The sergeant testified that, while he could not recall the woman giving him actual permission to proceed, she did not refuse him permission.

Before Sergeant Shabazz could enter the residence, an adult male exited the residence through the front door, identifying himself as [Appellant's] mother's boyfriend. The sergeant testified that he could not recall precisely what this man told him, but he testified that the man did not say anything about anyone else being inside the residence. The sergeant testified that he nonetheless decided to proceed with his "walk through" of the residence because, in his experience, the people living in the neighborhood could not be relied upon to give the police accurate information.

Sergeant Shabazz then entered the residence, at a time he estimated to be between 10 and 15 minutes after his initial arrival at the scene. The interior of the residence was dark, and the sergeant utilized his flashlight to look for people inside. In a vestibule or foyer almost immediately inside the residence, Sergeant Shabazz[] saw a silver handgun sitting in plain view on top of a black laundry bag. The sergeant saw this gun when a "glint" from the gun was reflected in the beam from the sergeant's

flashlight. The sergeant did not seize the gun at that time, but completed his "walk through" and ascertained that no one else was inside the residence. The sergeant then had the residence secured while a warrant was procured for a search of a residence.

The court determines that Sergeant Shabazz was fully justified in entering the residence at 3944 North 8th Street prior to securing a search warrant. The sergeant had probable cause to believe that a crime had been committed in that there was a man lying on the ground immediately in front of the residence with an apparent gunshot wound to the head. The sergeant certainly had cause to believe that 3944 North 8th Street was connected to the crime, in that the house had been "shot up," and the wounded man was lying in the street immediately outside the residence. The sergeant, further, clearly had a reasonable basis for concern that other potential victims and/or the assailant or assailants could be inside the residence. Exigent circumstances thus justified the "walk through" performed by the sergeant, which resulted in the discovery—in plain view—of the handgun, which led the police to secure a warrant for a search of the premises.

(Order, 9/14/16, at 1-4). Therefore, the court denied Appellant's motion to suppress.

During the ensuing three-day jury trial, the Commonwealth introduced the transcript of several prison phone calls made by Frank Artis, Sr. The recordings consisted of portions of several calls between Frank Artis, Sr. and his other son, Frank Jr.; Frank Artis, Sr. and his daughter Jazz; Frank Artis, Sr. and his girlfriend Talibah; Frank Artis, Sr. and an unknown third party; and a call between Frank Artis, Sr. and Appellant. (*See* Commonwealth's Exhibits 10-11). Appellant objected to the calls, claiming they constituted inadmissible hearsay evidence. The court overruled his objection.

At the conclusion of trial, on September 15, 2016, the jury found Appellant guilty of the above-mentioned offenses. During sentencing on May

4, 2017, the trial court sentenced Appellant to an aggregate sentence of not less than time served nor more than twenty-three months of incarceration, followed by thirteen years of probation.[2] Appellant did not file a post-sentence motion, but filed a timely notice of appeal on May 25, 2017.[3]

Appellant raises three questions on appeal.

[1. Whether] the [s]uppression [c]ourt err[ed] in finding that Sergeant Shabazz possessed exigent circumstances at the time he entered 3944 N. 8th Street, Philadelphia?

[2. Whether] the [s]uppression [c]ourt err[ed] in failing to suppress the search warrant for 3944 N. 8th Street, Philadelphia based upon the fruits of the poisonous tree doctrine?

[3. Whether] the [t]rial [c]ourt err[ed] in admitting the self-serving hearsay prison phone calls of Frank Artis, Sr. during his direct questioning by the Commonwealth?

(Appellant's Brief, at 9).

Appellant's first two questions concern the denial of his motion to suppress evidence, for which our standard of review is well-settled.

When we review the ruling of a suppression court, we must determine whether its factual findings are supported by the record. Where the [appellant] challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse

---

[2] The court noted that at the time of sentencing, Appellant was wheelchair-bound because of having been shot in the head. (**See** Trial Ct. Op., at 7).

[3] Pursuant to the court's order, Appellant filed a timely concise statement of errors complained of on appeal on June 16, 2017. The trial court filed its opinion on August 22, 2017. **See** Pa.R.A.P. 1925.

that court only if the legal conclusions drawn from those facts are erroneous.

Moreover as factfinder, it is within the suppression court's sole province to pass on the credibility of witnesses and the weight to be accorded their testimony. The factfinder is free to believe all, some, or none of the evidence presented.

***Commonwealth v. Griffin***, 785 A.2d 501, 504-05 (Pa. Super. 2001) (citations omitted).

In his first issue, Appellant argues that the trial court erred in failing to suppress the gun seized from the 3944 N. 8th Street apartment. (***See*** Appellant's Brief, at 21-40). Specifically, he claims that because this was a warrantless search of a home, the officer was required to show both exigent circumstances and probable cause, neither of which, Appellant argues, existed. (***See id.***). We disagree.

Generally, the police will be excused from compliance with the warrant and probable cause requirements of the Fourth Amendment to the United States Constitution in only limited circumstances. One of these circumstances is when the police reasonably believe that someone within a residence is in need of immediate aid. . . . The relevant inquiry is whether there was an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger[.] [T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.

***Commonwealth v. Potts***, 73 A.3d 1275, 1280-81 (Pa. Super. 2013), *appeal denied*, 83 A.3d 415 (Pa. 2013) (citations and quotation marks omitted).

In this case, the court found that, on January 7, 2013, Sergeant Shabazz responded to a call of shots fired and found the victim, Appellant, lying in his mother's arms on the sidewalk immediately outside of the apartment at 3944

- 6 -

N. 8th Street, having suffered a gunshot wound to the head. (*See* N.T. Suppression Hearing, 9/12/16, at 15, 18). He testified that the front of the apartment had strike marks that came from bullets from a handgun. (*See id.* at 20). Sergeant Shabazz stated that he "was concerned whether there were more victims, or even a possible shooter inside of that residence, so [he] wanted to do a walk-through of that residence . . . and make sure that there were no more people, especially victims inside of the house." (*Id.* at 20-21). He noted that the house seemed to be part of the target of the shooting and the projectiles "could have easily gone through the window and hit someone in the house." (*Id.* at 21).

Based on this evidence, we conclude that the totality of the circumstances justified Sergeant Shabazz's reasonable belief that he needed to enter the apartment to ensure that there were no shooting victims within. *See Potts*, *supra* at 1281; *Griffin*, *supra* at 504-05. Accordingly, Appellant's first issue does not merit relief.

In his second issue, Appellant contends that the trial court erred when it denied his motion to suppress the evidence obtained during the January 7, 2013 search of 3944 N. 8th Street, which search was pursuant to a warrant based, in part, upon the handgun that Sergeant Shabazz saw during his entry into the apartment. (*See* Appellant's Brief, at 40-42). Specifically, he claims "[t]he only information leading to probable cause was the gun that was viewed by [Sergeant Shabazz] during his illegal entry into the house and any

information obtained from that must be taken out." (*Id.* at 41) (citation omitted). Appellant's claim does not merit relief.

"The fruit of the poisonous tree doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts. A fruit of the poisonous tree argument requires an antecedent illegality." *Commonwealth v. Johnson*, 68 A.3d 930, 946 (Pa. Super. 2013) (internal quotation marks and citations omitted).

Here, because the initial search was justified by exigent circumstances, no antecedent illegality exists. (*See supra* at **6-7). Therefore, the fruit of the poisonous tree doctrine does not bar admission of the evidence recovered during the search.[4] *See Johnson*, *supra* at 946. Accordingly, Appellant's second issue does not merit relief.

---

[4] Although Appellant does challenge the affidavit as written—including the observation of the handgun, we note that based on the affidavit, the search warrant issued was supported by probable cause. "Probable cause exists where, based upon a totality of the circumstances set forth in the affidavit of probable cause, including the reliability and veracity of hearsay statements included therein, there is a fair probability that . . . evidence of a crime will be found in a particular place." *Commonwealth v. Lyons*, 79 A.3d 1053, 1064 (Pa. 2013), *cert. denied*, 134 S. Ct. 1792 (2014) (citation and internal quotation marks omitted). Here, the affidavit explained that after responding to a shooting, officers observed a handgun along with narcotics inside the first floor room; the officers requested a search warrant for processing the crime scene and recovering evidence including the handgun, ammunition, and narcotics. (*See* Affidavit of Probable Cause, 1/07/13, at 2). Thus, we conclude that the issuing authority had a substantial basis for its decision to issue the warrant. *See Lyons*, *supra* at 1064.

Finally, in his third question, Appellant claims that "[t]he [trial] [c]ourt erred when it permitted the Commonwealth to introduce, over [d]efense objection, the hearsay statements in the form of recorded prison calls, of the cooperating co-defendant, Frank Artis, Sr." (Appellant's Brief, at 42). Specifically, he claims that the statements were hearsay and they were not admissible as prior consistent statements or to demonstrate the declarant's state of mind, and the admission of the calls did not amount to harmless error. (*See id.* at 42-51). We disagree.

> The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.
>
> Hearsay is defined as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). . . .

*Commonwealth v. Bishop*, 936 A.2d 1136, 1143 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1159 (Pa. 2008) (case citations omitted).

"To the extent that prior consistent statements are offered to prove the truth of the matter asserted therein, they are plainly inadmissible hearsay. However, when they are offered to corroborate in-court testimony, prior consistent statements are not hearsay." *Commonwealth v. Hunzer*, 868

- 9 -

A.2d 498, 512 (Pa. Super. 2005), *appeal denied*, 800 A.2d 1237 (Pa. 2005) (citation omitted).

> Pennsylvania Rule of Evidence 613(c) provides as follows:
>
> > **(c) Evidence of prior consistent statement of witness.** Evidence of a prior consistent statement by a witness is admissible for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of:
> >
> > (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
> >
> > (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness' denial or explanation.
>
> Pa.R.E. 613(c). Usually, evidence of a prior consistent statement may not be introduced until after the witness's testimony has been attacked on cross-examination in one of the two ways specified in Rule 613(c). Pa.R.E. 613(c) cmt. Occasionally, however, it is clear before cross-examination that the defense will focus on impeachment of the witness, either by showing fabrication, bias, etc., or by introducing a prior inconsistent statement. In such cases, the trial court is afforded discretion to admit the prior consistent statement in anticipation of impeachment. ***See Commonwealth v. Wilson***, 580 Pa. 439, 861 A.2d 919, 930 (2004).

***Commonwealth v. Cook***, 952 A.2d 594, 625 (Pa. 2008). "[A] prior consistent statement is always received for rehabilitation purposes only and not as substantive evidence." ***Commonwealth v. Busanet***, 54 A.3d 35, 67 (Pa. 2012), *cert. denied*, 571 U.S. 869 (2013) (citation omitted).

Pennsylvania Rule of Evidence 803 provides exceptions to the hearsay rule, including the state of mind exception:

**Rule 803. Exceptions to the Rule Against Hearsay— Regardless of Whether the Declarant Is Available as a Witness**

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

\*   \*   \*

**(3) Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3).

In this case, the trial court concluded that Frank Artis, Sr.'s statements were admissible as prior consistent statements. It reasoned that because defense counsel had repeatedly referred to Frank Artis, Sr. as a liar during his opening statement, the Commonwealth was permitted to introduce the recorded phone calls as prior consistent statements, which corroborated his trial testimony, to rebut these accusations. (*See* Trial Ct. Op., at 18).[5]

Upon review, we conclude that the trial court did not abuse its discretion in admitting the statements offered as prior consistent statements. Frank

_____

[5] We agree with the Commonwealth that several of the statements, wherein Frank Artis, Sr. refers to Christina, were properly admitted not for the truth of the matter asserted, but to establish that he was using the name "Christina" in place of Appellant's name, as a point of reference for the other calls. (*See* Commonwealth's Exhibit 10).

- 11 -

Artis, Sr., who testified at trial that his son was the shooter in the August 21, 2012 shooting, had admittedly told several lies to police throughout the investigatory process. (*See* N.T. Trial, 9/14/16, at 67-70). Then, after reaching a proffer agreement with the Commonwealth, Frank Artis, Sr. first named Appellant as the shooter. (*See id.* at 72-73). Therefore, we conclude that the recorded prison phone calls, in which Frank Artis, Sr. refers to Appellant and his efforts to shield him from prosecution, were properly admitted as a prior consistent statement. *See Cook*, *supra* at 625.

Furthermore, we also agree with the trial court that several statements would also have been admissible under the state of mind hearsay exception. The court reasoned that the phone calls demonstrated his "reapeated attempts to encode his communication[,]" and reasoned that "Frank Artis, Sr.[] would not have gone to such great lengths to encode his communications and protect [Appellant], unless [he] knew [Appellant] was guilty." (Trial Ct. Op., at 19). Again, we agree that the trial court's admission of these statements under the state of mind exception to the hearsay rule was not an abuse of its discretion. *See Cook*, *supra* at 625; Pa.R.E. 803(3).

Finally, we agree that, even if the evidence were not properly admitted, its admission would have constituted harmless error. Error is harmless when the Commonwealth has demonstrated that:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so

overwhelming and the prejudicial [e]ffect of the error so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Passmore***, 857 A.2d 697, 711 (Pa. Super. 2004), *appeal denied*, 868 A.2d 1199 (Pa. 2005) (citation omitted).

Here, the trial court determined that, if wrongfully admitted, the evidence was harmless in light of the overwhelming evidence of Appellant's guilt. (***See*** Trial Ct. Op., at 22). At trial, Frank Artis, Sr. repeatedly testified that Appellant was the shooter, and that he possessed a .38 caliber gun (same as that gun used to shoot Clarke). Furthermore, the evidence demonstrated that the firearm found in the search of the residence where Appellant was shot, was the same that was used in the Clarke shooting. Accordingly, we conclude that the trial court did not abuse its discretion in concluding that even without the prison phone calls, the overwhelming evidence as a whole established Appellant's guilt. ***See Cook***, ***supra*** at 625; ***Passmore***, ***supra*** at 711.

Appellant's third issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/18

- 13 -