J-A05005-18

2018 PA Super 201

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN MCCLEARY | : | No. 244 EDA 2017 |
| | : | |
| Appellee | : | |

Appeal from the Order Entered December 7, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006625-2016

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS*, P.J.E.

DISSENTING OPINION BY MURRAY, J.:                      **FILED JULY 10, 2018**

I would hold that the Commonwealth failed to meet its burden of proving that the evidence was obtained lawfully from Appellee.  Thus, because I would affirm the order of the trial court granting suppression, I respectfully dissent.

Our Supreme Court has stated:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.  The suppression court's findings of fact bind an appellate court if the record supports those findings.  The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Nester***, 709 A.2d 879, 880-81 (Pa. 1998) (citations

---

\* Former Justice specially assigned to the Superior Court.

omitted). "Moreover as factfinder, it is within the suppression court's sole province to pass on the credibility of witnesses and the weight to be accorded their testimony. The factfinder is free to believe all, some, or none of the evidence presented." **Commonwealth v. Griffin**, 785 A.2d 501, 505 (Pa. Super. 2001) (citation omitted). The voluntariness of a consent to search "is a question of fact to be determined from the totality of the circumstances and while knowledge of the right to refuse consent is a factor to consider in determining whether consent to search was voluntarily and knowingly given, it is not dispositive." **Commonwealth v. Witman**, 750 A.2d 327, 338 (Pa. Super. 2000).

Here, the trial court concluded that under the totality of the circumstances, Appellee's consent to search was coerced.[1] The trial court considered that the two officers asked Appellee multiple times[2] whether they could search the upstairs bedroom, that Officer Grover told Appellee **after** the search that he "could have said no," and the officers did not advise Appellee **before** the search that he had a right to withhold consent, that anything found could be used against him, and that he could consult an attorney or withdraw consent. Trial Court Opinion, 4/26/17, at 3. The court also found that Officers

---

[1] The Commonwealth states that it does not challenge the suppression of Appellant's statements that the suspected marijuana and crack cocaine were his, based on a violation of **Miranda v. Arizona**, 384 U.S. 436 (1966). Commonwealth's Brief at 7 n.2.

[2] Officers Grover and Baynes each asked Appellee twice if they could search the bedroom. N.T., 12/7/16, at 22, 37, 66.

Grover and Baynes failed to follow Philadelphia Police Directives (Directives), which required them to notify a supervisor and obtain signed consent before conducting a search, and to verify the existence of a protection from abuse (PFA) order if, during a domestic dispute, one party avers that he has one against the other.[3]  The court additionally emphasized that had the officers properly verified the PFA, they would have known that Shavers should not have been there and would have immediately removed her from the house, and it would have been unnecessary to search the upstairs bedroom.  *Id.* at 6-7; N.T. Suppression Hearing, 12/7/16, at 94-95.  Finally, the trial court recognized that "[i]t is not uncommon for someone who has a PFA against them to have clothing in the place where they were removed from," and specifically found, after observing the officers' testimony firsthand, that their reason for searching the upstairs bedroom was "illusory."  N.T., 12/7/16, at 94.

Accordingly, I would hold, under the totality of the circumstances, that the trial court did not err in finding that Appellee's verbal consent was coerced. Although the original police radio call was for a burglary in process, Officers Grover and Baynes both testified that they determined, based on Appellee and

---

[3] At the suppression hearing, Officer Grover, a 10-year veteran of the force, and Officer Baynes, a 9-year veteran, both denied familiarity with the Directives.  Furthermore, while Officer Baynes testified that he called a supervisor and the supervisor arrived after Officer Baynes searched the upstairs bedroom, Officer Grover testified that he did not consult a supervisor. *Id.* at 39, 69.

Shavers' competing statements, that the dispute was whether Shavers had a right to be at the house. While the officers' stated reason for their search was to verify whether Shavers indeed lived there, neither the absence nor presence of women's clothing or items in a bedroom, in itself, would verify whether she had permission or a legal right to live at the house. In any event, even if Shavers did technically live there, her right to be at the house would be secondary to, as Appellee told the officers, the existence of a PFA order against her. It was the trial court's sole province to pass on the officers' credibility and the weight to be accorded their testimony, and the court was free to believe all, some, or none of the evidence presented. *See Griffin*, 785 A.2d at 505.

Furthermore, while the majority relies on, *inter alia*, **Commonwealth v. Ruey**, 892 A.2d 808 (Pa. 2006) (OAJC), and **Witman**, **supra**, I believe those cases may be distinguished on the facts. In **Ruey**, there was a defect in the affidavit of probable for a search warrant — the affiant failed to indicate the credibility of his source or the reliability of the information received. **Ruey**, 892 A.2d at 811. A plurality of our Supreme Court held that the defendant was not prejudiced by these "technical violations," and thus the evidence was admissible.[4] **Id.** at 814. In my estimation, the police violations in this case

_____

[4] Justice Newman wrote the opinion announcing the judgment of the court, which was joined by Justice Baer. Justice Castille filed a concurring opinion, which was joined by Justices Saylor and Eakin. Justice Saylor filed a concurring opinion, which was joined by Justice Castille. Chief Justice Cappy issued a dissenting opinion. Former Justice Nigro did not participate.

— the failure to advise Appellee of any of his rights before obtaining consent to search his home and the failure to follow the Directive to verify the existence of a PFA — were not mere technical violations.

Additionally, in *Witman*, the defendant placed a 911 call for emergency assistance for his minor brother, who was attacked and killed in their home. *Witman*, 750 A.2d at 330. The police established the home as a crime scene, the parents told police to do what they could to find their son's killer, and the police collected evidence from and around the house to investigate the homicide. *Id.* at 332-33. After discovering some evidence, the defendant was charged with killing his brother.[5] *Id.* at 333-34. On appeal, this Court affirmed the admission of the evidence, holding that "where a defendant has summoned police and set the tone for the initial investigation," he has impliedly consented to a search of his home, and thus a search warrant is not required. *Id.* at 335. The defendant in *Whitman* called the police to report an attack on his brother and thus a search of the home was necessary to investigate the homicide. In this case, Appellee requested police assistance in removing Shavers from his home and then told Officers Grover and Baynes that he had a PFA order against her. The trial court found, as discussed above, that had the officers properly followed the Directives and verified that Appellee

---

[5] After the detectives initially discovered some evidence, they obtained a search warrant and then obtained additional evidence. *Witman*, 750 A.2d at 334.

- 5 -

had an active PFA order, a search would not have been necessary. Under the totality of these circumstances, I agree with the trial court that Appellee did not provide valid consent to a search of his home. *See Witman*, 750 A.2d at 338.

For these reasons, I would affirm the order of the trial court granting Appellee's motion to suppress. Accordingly, I respectfully dissent.