J-A23008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EZZIE CHARLES JOHNSON | : | |
| | : | |
| Appellant | : | No. 110 MDA 2021 |

Appeal from the Judgment of Sentence Entered January 5, 2021
In the Court of Common Pleas of Centre County
Criminal Division at CP-14-CR-0001386-2019

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED NOVEMBER 15, 2021**

Ezzie Charles Johnson (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of two counts of possession with intent to deliver (PWID).[1]   In his sole issue, Appellant challenges the denial of his pre-trial motion seeking to suppress evidence. Upon careful review, we affirm.

The suppression court described the events leading to Appellant's arrest as follows:

> Detective Donald Paul ("Detective Paul") is employed by the State College Police Department Criminal Investigations Division, Drug Enforcement Section.  On October 2, 2019, Detective Paul was conducting surveillance of [Appellant's] residence located at 215 E. Logan Street, along with Detective Chris Federinko ("Detective

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

Federinko"), Trooper Ryan Maggs ("Trooper Maggs"), and Trooper Trevor Danko ("Trooper Danko").

The Commonwealth alleges knowledge of [Appellant's] address was acquired following a hearing wherein the Honorable Katherine V. Oliver issued a bench warrant for one of [Appellant's] alleged co-conspirators, Dana Walk ("Walk"), said warrant listing 215 E. Logan St. Bellefonte, PA as Walk's residence. Walk's warrant was issued due to alleged probation violations, including the use of controlled substances.

"Based on previous surveillance and tips from a known informant," the above law enforcement personnel began surveillance of [Appellant's] residence at approximately 10:30 a.m. for drug-related activity. The previous surveillance revealed [Appellant] delivering controlled substances from the local Ramada Inn in August of 2019.

Walk [also] lived at the residence on Logan Street in Bellefonte with her then boyfriend, Jeff Spicer ("Spicer"). Detective Paul saw Walk and another individual, Ricky Vannoy ("Vannoy"), enter the residence at approximately 12:11 p.m. While conducting surveillance, multiple individuals were seen coming and going from the residence and speaking with [Appellant] on the porch, their behavior noted as being consistent with drug dealing activity.

One such individual was later identified as Kylie Smith ("Smith"), whom Detective Paul decided to follow until she parked in order to make contact with her. When Detective Paul approached Smith, she was getting out of her vehicle while speaking on her cell phone. Detective Paul identified himself [specifically stating he was from Drug Enforcement] and asked if he could speak with Smith, to which she agreed and hung up her phone. Smith later confirmed she was speaking with Spicer on her cell phone when she was approached by Detective Paul.

During their conversation, Smith admitted to purchasing methamphetamine from individuals within the residence on Logan Street. Smith told Detective Paul that Spicer was currently traveling out of state. Spicer sent a text message to Smith during her interaction with Detective Paul which read, "You good hun?" Smith later allowed Detective Paul and the other officers [to] take photographs of her text messages with Spicer involving her

purchase of methamphetamine within the residence. Detective Paul asked for permission to search the vehicle and Smith consented. During his search, Detective Paul discovered a small plastic bag of crystal meth in Smith's wallet and alerted the other officers.

Detective Paul provided testimony indicating concern regarding the remaining occupants of the residence becoming aware of the police officer presence and the [potential for] destruction of evidence. Based on his concern, Detective Paul directed the other officers to secure the residence while he made the application for a search warrant.

Corporal McGuire and Trooper Danko approached the residence in full uniform and saw an individual standing in the doorway. Trooper Danko testified to stating, "Hey, I need to talk to you," as he approached the front door of the residence. At that time, the individual, who was confirmed via radio to be [Appellant], attempted to run back inside the residence and close the doors on the officers. The officers and [Appellant] struggled at the door until Trooper Maggs assisted the officers in pushing it open.

After pushing the door back open, the officers could visibly see drugs under the couch and on the coffee table in the living room. A protective sweep was conducted. Trooper Maggs testified to clearing the residence and detaining the individuals inside. Detective Paul testified the entry into the home was in order to secure the residence and prevent the destruction of evidence. Detective Paul obtained a warrant to search the residence following the protective sweep.

The Affidavit of Probable Cause for the search warrant stated, "Based upon your affiant's experience, training and all of the circumstances of this case, it is believed that probable cause exists to search the residence based upon the following … (4) additional drugs were observed in plain view on the coffee table in the residence." Methamphetamine, heroin, fentanyl, marijuana and pills were found within the residence. Smith provided conflicting statements as to who handed her the methamphetamine.

Suppression Court Opinion, 6/2/20, at 1-4 (footnote and record citations omitted; paragraphs modified).

As a result of the police investigation and search of the residence, Appellant was arrested and charged with 15 crimes. On December 16, 2019, Appellant filed a motion to suppress, challenging the warrantless entry into the residence. The court held a hearing on January 16, 2020, and on June 2, 2020, it issued an opinion and order denying the motion. Following an October 1, 2020 bench trial, the court convicted Appellant of two counts of PWID.[2] On January 5, 2021, the court sentenced Appellant to an aggregate 7 - 14 years of incarceration. Appellant timely appealed.[3]

Appellant states his suppression issue as follows:

Did the Trial Court err in denying Appellant's Motion to Suppress, which argued that the police violated [Appellant's] constitutional rights when the police conducted a warrantless entry and search of the residence without any valid exigent circumstances?

Appellant's Brief at 8.[4]

_____

[2] Counts 1-4 and 7-15 were *nol prossed*.

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

[4] Appellant does not specify whether he is claiming the trial court violated his rights under the Fourth Amendment to the United States Constitution, Article 1, Section 8 of the Pennsylvania Constitution, or both. To the extent he is challenging the denial of his motion to suppress pursuant to Article 1, Section 8, Appellant does not distinguish his state constitutional rights as being greater than his federal constitutional rights. **See Commonwealth v. Haynes**, 116 A.3d 640, 644-55 (Pa. Super. 2015) (discussing the history of Article 1, Section 8, and its differences and similarities to the Fourth Amendment).

Appellant argues "no such exigent circumstances existed to justify law enforcement's warrantless entry and search" of the residence, and "even if" exigent circumstances existed, "the situation was created by" police conduct. Appellant's Brief at 24, 26.

We begin by recognizing:

> [Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted). Further, our review is limited to the suppression hearing record. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013). "[I]t is the sole province of the suppression court to weigh the credibility of witnesses," and "the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Blasioli*, 685 A.2d 151, 157 (Pa. Super. 1996) (citation omitted).

Both the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures of their residence. *See Commonwealth v. Richter*, 791 A.2d 1181, 1184 (Pa. Super. 2002) (*en banc*). Consequently, a search warrant is generally required to search a home, and "[a]bsent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Commonwealth v. Caple*, 121 A.3d 511, 517 (Pa. Super. 2015). One such exception is exigent circumstances.

> The exigent circumstances exception to the warrant requirement recognizes that some situations present a compelling need for instant arrest, and that delay to seek a warrant will endanger life, limb or overriding law enforcement interests. In these cases, our strong preference for use of a warrant must give way to an urgent need for immediate action.

> In determining whether exigent circumstances exist, a number of factors are to be considered. Among the factors to be considered are: (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is a strong reason to believe that the suspect is within the premises to be searched, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, *i.e.*, whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

> Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling.

***Richter***, 791 A.2d at 1184-85 (citation omitted).

This Court has explained that an exigent circumstances determination requires the suppression court to examine "all of the surrounding circumstances in a particular case." ***Caple***, 121 A.3d at 518. Moreover, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving." ***Commonwealth v. Potts***, 73 A.3d 1275, 1280-81 (Pa. Super. 2013).

> Here, the suppression court reasoned:

> In the present matter, it cannot be argued the manufacture, possession and sale or distribution of heroin and fentanyl out of the residence and to the public is not a serious offense. Moreover, the destruction of evidence is highly probable when dealing in substances which can easily be flushed down a drain. [S]ignificantly, given the realities of police interaction with the public and those engaged in criminal activity, it was reasonable for Detective Paul to believe his interaction with Smith could lead to others becoming aware of the police presence. Importantly, the Commonwealth notes the fact that there was an exit in the back of the property, making it quite easy for someone to flee without detection.

Suppression Court Opinion, 6/2/20, at 10-11.

Conversely, Appellant claims "no such exigent circumstance existed," and states, "[t]he Pennsylvania Supreme Court has repeatedly disavowed warrantless entries based on concerns - such as Detective Paul's - that word could potentially travel back to the target residence and lead to evidence

destruction."[5]  Appellant's Brief at 24.  He dismisses Detective Paul's concern that Spicer overheard Detective Paul identify himself to Kylie Smith as "speculative."  *Id.* at 25.  We are not persuaded by Appellant's argument.

This Court — in numerous cases involving law enforcement observation of residences connected with illegal drug activity — has recognized the potential for destruction of evidence when it is likely the occupants of the residence have become aware of the police presence.  Under these circumstances, we have found exigent circumstances to justify warrantless entry to secure the residence.

In **Commonwealth v. Griffin**, 785 A.2d 501 (Pa. Super. 2001), after police arrived at an apartment "with ample information amounting to probable cause [of] recent drug-related activity," three suspects "retreated into the apartment house upon seeing the officers."  **Id.** at 504, 506.  Without a

_____

[5] Appellant's argument is undermined by his reliance on cases which, for the most part, were decided in the 1980s and 1990s.  More recently, suppression law has evolved with societal views and technological advances.  **See e.g., Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020) (warrantless vehicle searches require both probable cause and exigent circumstances under the state constitution, overruling **Commonwealth v. Gary**, 91 A.3d 102, 138 (Pa. 2014) ("prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required")); **see also Commonwealth v. Gallagher**, 2021 PA Super 204 (Oct. 12, 2021) (*en banc*) (affirming grant of suppression where defendant consented verbally and in writing to search of his cell phone, but could not "have made a knowing, voluntary" consent because he did not know "the true scope of [the] rights he was waiving," which involved "total capture of all cell phone data, including data he may not have known the phone contained.").

warrant, police entered the apartment, subdued the suspects, and secured the apartment until a warrant was obtained. *Id.* We concluded the warrantless entry was proper based on "probable cause … of felonious activity" at the residence, combined with the suspects' retreat when they saw police, and the corresponding "potential destruction of evidence related to the suspected drug distribution." *Id.* at 506.

In *Commonwealth v. Bostick*, 958 A.3d 543 (Pa. Super. 2008), the police arrested several drug buyers and one seller as a result of police surveillance of an area which included a house the individuals entered and exited. *Id.* at 547-48. While the police were waiting for a warrant to search the house, a suspect in the house saw two police officers in the vicinity, and as a result, police entered the house without a warrant. *Id.* at 557-58. We explained:

> Combined with the fact that [the suspect] said "oh shit" when he saw the police and made furtive movements behind the door as if he were tossing objects to conceal them, along with the probability gained from surveillance that the house contained a stash of drugs, police could reasonably conclude that an exigency arose with regard to the possibility that [the suspect] and/or other persons inside the residence would destroy incriminating evidence.

*Bostick*, 958 A.2d at 558. Thus, we concluded exigent circumstances justified the warrantless entry. *Id.*

In *Commonwealth v. Howard*, 64 A.3d 1082 (Pa. Super. 2012), police arrested drug buyers and the seller/defendant who had left the residence being surveilled. *Id.* at 1084-85. While waiting for a search warrant, and

without indication the individuals remaining in the residence were aware of the police presence, the police knocked-and-announced to secure the exterior of the premises. *Id.* at 1085-86. We explained:

> prior to venturing to the home, [the police officer] intended to secure the exterior exits and had knocked on the door only to verify that no one remained inside. He … was surprised when [a woman] answered the door, but found it necessary to enter the house when, as [the woman] opened the door, she tried to dispose of the drugs in her hand.

*Howard*, 64 A.3d at 1086.

Accordingly, we found no error in the warrantless entry because police entered the residence to secure the premises and prevent the destruction of evidence. *Id.* at 1086.

Next, in *Commonwealth v. Johnson*, 68 A.3d 930 (Pa. Super. 2013), police received reports of drug dealing at a trailer park. Upon arriving at the trailer park and approaching the specific trailer identified by informants, the police, in plainclothes and an unmarked vehicle, encountered one of the suspects identified by informants as "an older white female with red hair." *Id.* at 931. The woman asked the police who they were, and after they told the woman they were police, they asked her "to leave the area so they could continue their investigation." *Id.* at 932. Although the woman complied, the police were concerned she might alert the trailer occupants that they were there, "leading to the destruction of evidence." *Id.* Without obtaining a warrant, the police approached the residence, smelled marijuana, and knocked on the door. *Id.* The defendant opened the door, but became

- 10 -

combative and "sought to retreat." *Id.* at 945. Consequently, police restrained the defendant, "simultaneously informing him that they needed to secure the trailer, pending a search warrant, out of fear that [he] might destroy the burning marijuana." *Id.* We reversed the trial court's grant of suppression, finding the "police officers' actions were supported by probable cause and exigent circumstances." *Id.* at 934.

Instantly, police conducted surveillance of the residence and observed several probable drug transactions before stopping Kylie Smith. Smith was talking on the phone with one of the suspects, Spicer, when Detective Paul identified himself as being from Drug Enforcement. Smith hung up with Spicer, but during her interaction with Detective Paul, Spicer texted her asking, "You good hun?" Fearing Spicer would contact individuals in the residence before they obtained a warrant, police lawfully[6] approached the residence, identified themselves, and attempted to speak with Appellant. Appellant shut the door and attempted to flee. In these circumstances, police had a legitimate concern that evidence would be destroyed and the individuals inside the residence would flee from the back of the residence if they did not secure it. The facts supporting exigent circumstances in this case align with

_____

[6] *See Florica v. Jardines*, 569 U.S. 1, 9 (2013) ("A police officer not armed with a warrant may approach a home in hopes of speaking to its occupants, because that is no more than any private citizen might do.") (citation omitted); *Commonwealth v. Gibson*, 638 A.2d 203, 207 (Pa. 1994) ("the police have the power to knock on the doors of the citizens of this Commonwealth for investigatory purposes without probable cause.").

- 11 -

those in **Griffin**, **Bostick**, **Howard** and **Johnson**. Accordingly, the suppression court did not err in determining that exigent circumstances existed to justify the warrantless entry of the residence.

Appellant additionally argues that even if exigent circumstances existed, the warrantless entry was unconstitutional because the exigent circumstances were "police-contrived" and Pennsylvania courts have "prohibited the police from benefitting from creating their own exigencies[.]" Appellant's Brief at 25. Appellant relies on the Pennsylvania Supreme Court decisions in **Commonwealth v. Melendez**, 676 A.2d 226 (Pa. 1995) and **Commonwealth v. Mason**, 637 A.2d 251 (Pa. 1993). **Id.** at 30-36.

Initially, as this Court stated in **Commonwealth v. Haynes**, 116 A.3d 640 (Pa. Super. 2015), both **Melendez** and **Mason** "have been the subject of criticism and curtailed on other grounds." **Haynes**, 116 A.3d at 653. Both decisions are close to 30 years old.[7] In addition, Appellant does not

---

[7] Moreover, both cases are factually inapposite. In **Mason**, the police stopped and arrested one of the buyers from a surveilled residence. **Mason**, 535 U.S. at 562. While waiting for a warrant, one the police officers decided to enter the residence, even though there was no indication the residents were aware of the police presence. **Id.** at 563. Posing as a maintenance man, the officer knocked on the door and when there was no answer — without identifying himself as police — used a battering ram to enter the apartment. **Id.** In holding the police created the exigency, our Supreme Court focused on the fact "there was no reasonable explanation for battering down the door before the warrant arrived." **Id.** at 568-69.

In **Melendez**, police observed one of the occupants of a residence, defendant Melendez, leave the house and drive away. **Melendez**, 676 A.2d at 227. *(Footnote Continued Next Page)*

acknowledge or discuss current jurisprudence regarding police-created exigencies under either the Fourth Amendment or Article 1, Section 8 of the Pennsylvania Constitution; in particular he disregards the United States Supreme Court's seminal decision in ***Kentucky v. King***, 563 U.S. 452 (2011).

> In ***King***, police set up a controlled buy of crack cocaine outside an apartment complex. An undercover officer watched the transaction occur and then radioed to uniformed officers to arrest the suspect. The officers were unable to stop the person before he entered an apartment. ... [P]olice did not see which apartment the suspect entered, but heard a door close and detected a very strong odor of marijuana from one of two apartments in the vicinity. The suspect actually entered the apartment not at issue. One officer knocked loudly and announced the presence of police at the apartment from which the marijuana smell was emanating. That officer maintained that he could hear the sound of things being moved inside. Therefore, he kicked down the door. Marijuana and powder cocaine were located in plain view.

> The Kentucky Supreme Court ruled that police improperly created their own exigency in violation of the Fourth Amendment. The United States Supreme Court granted *certiorari* to consider whether the exigent circumstance rule applies "when police, by knocking on the door of a residence and announcing their presence, cause the occupants to attempt to destroy evidence." ***King***, ***supra*** at 1854.

> The ***King*** Court reasoned that a rule precluding police from making a warrantless entry to prevent destruction of evidence "would unreasonably shrink the reach of this well-established exception to the warrant requirement." ***Id.*** at 1857. The

---

Although police had not observed Melendez engage in criminal activity, they stopped the car. ***Id.*** Upon searching Melendez's purse, they discovered a gun, a large amount of cash, and a "drug tally sheet." ***Id.*** The police then transported Melendez back to the residence, used her keys to enter, and observed her co-defendant inside holding a bag of cocaine. ***Id.*** The Supreme Court found police created the exigent circumstances by alerting Melendez to surveillance during the illegal stop of her car. ***Id.*** at 229-30.

Supreme Court discussed various state and federal approaches that precluded a finding of exigency under similar circumstances. With respect to cases concluding that police possessed probable cause and sufficient time to secure a warrant, it submitted that such an approach "unjustifiably interferes with legitimate law enforcement strategies." *Id.* at 1860. The *King* Court found that, "Faulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution." *Id.* at 1861. Thus, *King* held that the police, by knocking and announcing, did not impermissibly create the exigency needed for a warrantless search.

*King* thus calls into question portions of [*Commonwealth v.*] *Demshock*[, 854 A.2d 553 (Pa. Super. 2004)] and [*Commonwealth v.*] *Waddell*[, 61 A.3d 198 (Pa. Super. 2012)] insofar as they rely on the Fourth Amendment and the now-overruled view that under the Fourth Amendment the police cannot create their own exigency by knocking and announcing.

*Haynes*, 116 A.3d at 645-46 (footnote omitted).

In *Haynes*, police observed a woman conduct multiple drug sales, and stopped a buyer who admitted to purchasing drugs from the woman. *Id.* at 642. When the police were unable to intercept the woman before she re-entered the residence, they approached the door and smelled burning marijuana. *Id.* After knocking-and-announcing, and receiving no response, the police kicked in the door. *Id.* at 643. In plain view they observed heroin, cash, and a burnt marijuana blunt. *Id.* They then obtained a search warrant. *Id.*

On appeal, the defendant/appellant argued the trial court erred in denying his motion to suppress "the fruits of the raid" because the warrantless entry violated the Pennsylvania Constitution. *Id.* After an extensive

discussion of **King**, **supra**, and a historical analysis of Pennsylvania law, this Court found the police did not create the exigency, and the warrantless entry was permissible under the Pennsylvania Constitution. We stated:

> Here, police personally observed the drug transactions. They then pursued the culprit, knocked, asked to speak to the renter, and announced that it was police before entering. These actions are consistent with allowable, *i.e.*, reasonable, 18th century common law practice. Police only forcibly entered after the renter refused to open the door, again a practice not prohibited by the 1776 and 1790 constitutions. Further, police did not uncover the drugs in question by undertaking an overbroad and prohibited search of the entire residence on the grounds that it was incident to arrest. Rather, the drugs were seized in plain view.

**Id.** at 655.

Here, as in **Haynes**, police observed apparent drug transactions, and, having probable cause, stopped Smith, who was on the phone with one of the suspects, Spicer, and in possession of methamphetamine she purchased at the residence. Then, unlike **Haynes**, the police identified themselves to Appellant when they were outside the residence. The police only entered the residence when Appellant retreated, shut the door, and attempted to flee. As in **Haynes**, the police did not search the residence but saw drugs in plain view. We thus conclude police did not create the exigent circumstances. **See also, Howard**, 64 A.3d at 1091 (relying on **King**, **supra**, and finding no police-created exigency where police knocked-and-announced, and resident who opened door tried to destroy evidence).

Judgment of sentence affirmed.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/15/2021