J-S27038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DONALD RAY ROMESBURG | : | No. 1733 WDA 2018 |

Appeal from the Order Entered November 7, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001299-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MELISSA L. WARGO | : | No. 1734 WDA 2018 |

Appeal from the Order Entered November 7, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001301-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARK ALAN CRISWELL | : | No. 1735 WDA 2018 |

Appeal from the Order Entered November 7, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001300-2018

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

---

*   Retired Senior Judge assigned to the Superior Court.

MEMORANDUM BY COLINS, J.:                    **FILED JULY 12, 2019**

In these consolidated appeals, the Commonwealth appeals from the trial court's order, which granted the motions of Appellees, Melissa L. Wargo, Donald Ray Romesburg, and Mark Alan Criswell, to suppress evidence seized during a June 7, 2017 search of a Smithfield, Pennsylvania residence and Appellees' *habeas corpus* motions to dismiss the charges of dealing in proceeds of unlawful activities[1] against them.  We affirm.

On June 7, 2017, Corporal Creighton Callas of the Pennsylvania State Police received a tip from Lieutenant John Harvey Bryant of the Preston County, West Virginia Sheriff's Department regarding a large marijuana grow operation on Great Lakes Road in Smithfield.  N.T., 5/30/18, at 30; N.T., 10/22/18, at 12-13.  The tip identified the Appellees as residing at the address.  N.T., 5/30/18, at 30; N.T., 10/22/18, at 12.  Corporal Callas did not speak to the informant directly or discover the informant's name, and no information relating to the reliability of the informant was known to the Pennsylvania State Police.  N.T., 5/30/18, at 20-21, 30, 45; N.T., 10/22/18, at 6-7, 9-10.

Based on the tip, Corporal Callas and Troopers Robert Hughes, Adam Kezmarsky, and Matthew Rucinski went to the identified Smithfield address to perform a "knock and talk."  N.T., 5/30/18, at 6-8, 12, 30-31; N.T., 10/22/18, at 5-6, 11.  While traveling on Great Lakes Road, a single-lane gravel road,

---

[1] 18 Pa.C.S. § 5111(a)(1).

the troopers encountered a black SUV, which was pulling out of the driveway of the troopers' destination.  N.T., 5/30/18, at 7, 13-14, 24-26, 34; N.T., 10/22/18, at 8.  Trooper Hughes, who was leading the investigation, directed Trooper Rucinski to stop the vehicle, but, before Trooper Rucinski could do so, the SUV pulled off the road and stopped approximately 40 to 50 yards from the driveway entrance to let the troopers pass.  N.T., 5/30/18, at 7, 14, 16, 24, 34-35, 46, 55-56; N.T., 10/22/18, at 8-9.  The troopers exited their vehicles and approached the SUV, which was driven by Appellee Wargo.  N.T., 5/30/18, at 7-8, 25, 35; N.T., 10/22/18, at 8.  Trooper Hughes detected a strong odor of raw marijuana from Wargo, and he directed Trooper Rucinski to detain Wargo at that location while the other three troopers proceeded to the residence.  N.T., 5/30/18, at 8, 27-28, 35-36, 46, 57-58.

Troopers Hughes and Kezmarsky and Corporal Callas then proceeded to the house, which was set back approximately 50 to 70 yards from the road down a hill and surrounded by woods.  *Id.* at 8, 36; N.T., 10/22/18, at 5-8, 10.  Three cars were present in the driveway when they pulled up to the house.  N.T., 5/30/18, at 37, 52.  When the three troopers arrived at the house, Appellees Criswell and Romesburg exited the front door and approached the troopers.  *Id.* at 10, 37, 46-47.  The troopers detected a very strong odor of raw marijuana that grew stronger as they walked towards the house.  *Id.* at 8, 10, 17-18, 22-23, 37, 47-48.  The troopers detained Criswell and Romesburg, and then heard a noise from inside the house, which sounded like "physical movement" or "another person possibly running around."  *Id.* at 11,

19, 21, 27-28, 37, 48-49.  Trooper Kezmarsky asked Criswell and Romesburg, whether there was anyone else inside the house; either Criswell or Romesburg responded that no one else was home.  *Id.* at 18-19.

Concerned for their safety and the potential destruction of evidence related to the marijuana grow operation, Trooper Kezmarsky and Corporal Callas entered the house and swept the house room-by-room, looking in any area that would be large enough for a human to hide.  *Id.* at 11, 19, 27, 37. The troopers did not find anyone else inside the house, but did notice several cats present to which they attributed the noise they had heard.  *Id.* at 12. The troopers also discovered in plain view live marijuana plants, marijuana drying on screens, and pound bags of marijuana.  *Id.* at 11-12, 19-20, 49.

Upon the completion of the sweep of the house, Trooper Kezmarsky related what he saw inside the house to Trooper Hughes.  *Id.* at 12, 38.  Based on this information along with their detection of a strong raw marijuana odor and the information from the West Virginia tip, Trooper Hughes applied for a search warrant for the house and a detached shed behind the house.  *Id.* at 38, 54.  The application was granted, and the troopers seized approximately 48 pounds of bagged marijuana, 111 marijuana plants, 50 of which were located in the shed, along with lights and other materials used in the grow operation. *Id.* at 39-40, 50, 54.  The troopers also seized $7,572 in cash from a bedroom in the house and various unlabeled pill bottles containing tramadol and hydrocodone.  *Id.* at 41, 44, 50.  The troopers did not find any prescriptions for the pills that were seized, but also did not ask Appellees

whether the pills were prescribed. *Id.* at 51, 57. The troopers also did not perform any test on the cash to determine whether any traces of controlled substances were present. *Id.* at 50.

On June 8, 2017, Appellees were each charged with dealing in proceeds of unlawful activities, 18 Pa.C.S. § 5111(a)(1); manufacture, delivery or possession of a controlled substance with intent to deliver, 35 P.S. § 780-113(a)(30); adulteration, mutilation, destruction, obliteration, or removal of label, 35 P.S. § 780-113(a)(5); two counts of possession of a controlled substance, 35 P.S. § 780-113(a)(16); and use or possession of drug paraphernalia, 35 P.S. § 780-113(a)(32). On May 30, 2018, a preliminary hearing was conducted at which Troopers Hughes and Kezmarsky testified. At the conclusion of the preliminary hearing, the magisterial district judge held the charges over for court. N.T., 5/30/18, at 58. On June 26, 2018, the Commonwealth filed notices of consolidation of the three criminal matters for trial. On July 16, 2018, the Commonwealth filed a criminal information against each Appellee, which added a third count of possession of a controlled substance.

On August 22, 2018, Appellees filed omnibus pre-trial motions seeking the suppression of the evidence collected during the searches of the Smithfield property and the dismissal of the charges against them based on the

Commonwealth's purported failure to present a *prima facie* case.[2,3]  A hearing

was held on the motions on October 22, 2018, at which Trooper Hughes and

Lieutenant Bryant of the Preston County, West Virginia Sheriff's Department

testified, and the transcript of the preliminary hearing was submitted into the

record.  N.T., 10/22/18, at 3.

On November 7, 2018, the trial court entered an order granting the

motions to suppress the evidence seized during the June 7, 2017 searches of

the Smithfield property, denying the motions to suppress statements made

by Appellees Criswell and Wargo, and granting the *habeas corpus* motions

with respect to the dealing in proceeds of unlawful activities charges.  In light

of these rulings, the trial court dismissed all of the charges against Appellees.

In its opinion accompanying the order, the trial court rejected the

Commonwealth's contention that exigent circumstances related to the

potential destruction of evidence justified the warrantless entry of the

residence:

> The possibility that an occupant in the residence might attempt to
> destroy evidence would be a possibility these trained narcotic
> officers would anticipate and be prepared to deal with.  However,

---

[2] Appellee Romesburg sought the dismissal of only four of the charges
against him:  dealing in proceeds of unlawful activities; adulteration,
mutilation, destruction, obliteration, or removal of label; and two of the
possession of a controlled substance charges.
[3] Appellees Criswell and Wargo also sought suppression of statements they
made to the officers in their omnibus pre-trial motions.  The trial court
denied the motions to suppress statements because no evidence was
presented of any statements made to the officers nor was there testimony
presented regarding the circumstances of when such statements, if any,
were made.  Trial Court Opinion and Order, 11/7/18, at 5-6.

the sound of movement, without more, was insufficient to excuse a warrantless search of this home. Large quantities of marijuana cannot easily be destroyed in the same manner as other forms of controlled substances. As the troopers believed this was a large marijuana manufacturing operation, the troopers could have secured the Defendants in front of the residence while a warrant was being obtained. If circumstances changed while they were awaiting the warrant, then other actions could have been taken. There simply was no serious risk that a substantial quantity of marijuana would have been destroyed while the officers secured the residence but did not enter it. The troopers lacked sufficient and valid exigent circumstances to permit a warrantless intrusion of the property.

Trial Court Opinion and Order, 11/7/18, at 4. The trial court recognized that probable cause existed for a search warrant when the troopers smelled the odor of raw marijuana as they were approaching the house. *Id.* at 3. However, in the absence of a warrant or exigent circumstances, the trial court concluded that the search of the home by Trooper Kezmarsky and Corporal Callas was in contravention of the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Id.* at 4.

The trial court further ruled that the evidence collected at the Smithfield property was not admissible under the doctrine of inevitable discovery because the Commonwealth had not demonstrated a source of information fully independent from the tainted evidence and the investigative team that engaged in the warrantless search of the residence. *Id.* at 4-5. The trial court determined that the information provided to the State Police by the Preston County, West Virginia Sheriff's Department was devoid of information concerning the reliability of the informant, and was by itself insufficient to

support a finding of probable cause. *Id.* at 3. The trial court concluded that, because the evidence of the illegal search of the residence was suppressed, the violations of The Controlled Substance, Drug, Device and Cosmetics Act would have to be dismissed. *Id.* at 5. In addition, the trial court concluded that the Dealing in Proceeds of Unlawful Activities charge would have to be dismissed because the Commonwealth had not presented evidence that Appellees engaged in any financial transactions or sale of either marijuana or the tramadol and hydrocodone pills found inside the residence. *Id.*

The Commonwealth filed timely notices of appeal of the trial court's November 7, 2018 order.[4] By an April 12, 2019 order, this Court consolidated the Commonwealth's three appeals.

> The Commonwealth presents the following three issues on appeal:
>
> 1. Did the Trial Court error in granting the Appellees' Pre-Trial Motion to Suppress Evidence in finding that the Pennsylvania State Police did not have exigent circumstances to validate a warrantless search of the Appellees' home?
>
> 2. Did the Trial Court error in granting the Appellees' Pre-Trial Motion to Suppress evidence in rejecting the Commonwealth's argument of inevitable discovery?
>
> 3. Did the Trial Court error in granting the Appellees' Habeas Corpus Motion regarding the charge of Dealing in Proceeds of Unlawful Activity?

Commonwealth's Brief at 4 (suggested answers omitted).

---

[4] The Commonwealth filed its statements of errors complained of on appeal on January 2, 2019. On January 3, 2019, the trial court entered a statement in lieu of opinion, in which it indicated that it was relying on its earlier opinion.

Our standard of review in a review of the denial of a suppression motion is whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Raglin*, 178 A.3d 868, 871 (Pa. Super. 2018). The suppression court has sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. *Commonwealth v. Duke*, ___ A.3d ___, 2019 PA Super 115, *7 (filed April 12, 2019). We are not bound by the suppression court's conclusions of law, and our standard of review of questions of law is *de novo*. *Commonwealth v. Millner*, 888 A.2d 680, 685 (Pa. 2005). Our scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing. *Commonwealth v. Fulton*, 179 A.3d 475, 487 (Pa. 2018).

The Commonwealth's first argument on appeal is that the search was justified by exigent circumstances. "Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa. Super. 2017). "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa. Super. 2013). Among the recognized exceptions to the warrant requirement is exigent circumstances; "[a]bsent probable cause and exigent circumstances,

warrantless searches and seizures in a private home violate both the Fourth Amendment" and Article I, Section 8. *Duke*, 2019 PA Super 115, *7.

In *Commonwealth v. Roland*, 637 A.2d 269 (Pa. 1994), our Supreme Court listed various factors to be considered when determining whether exigent circumstances exist, including:

> (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.
>
> Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling.

*Id.* at 270-71 (citations omitted); *see also Commonwealth v. Bowmaster*, 101 A.3d 789, 793 (Pa. Super. 2014). The Commonwealth bears a "heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests," and must present clear and convincing evidence to meet this burden. *Roland*, 637 A.2d at 271 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984); *Duke*, 2019 PA Super 115, *8.

The Commonwealth argues that the balance of factors weighs in favor of a finding of exigent circumstances that justified the warrantless search. The Commonwealth argues that the troopers had probable cause to search the residence based upon the strong odor of raw marijuana emanating from the house and Appellee Wargo coupled with the previous information that they

had received from West Virginia regarding a large marijuana operation. The Commonwealth asserts that the troopers lacked sufficient knowledge to rule out that anyone else was present in the house, based on the fact that the property was located in a remote, wooded location and that there was one more vehicle in the driveway than known occupants of the house. Thus, the Commonwealth contends, when the troopers heard a noise inside the house, they reasonably believed that someone inside was potentially destroying evidence or posed a threat to the troopers' safety. Finally, the Commonwealth notes that the incident took place during daylight hours and the criminal offense of the manufacture of large quantities of marijuana was a serious offense, additional factors under **Roland** weighing in favor of the troopers' need to make entry to secure the premises.

This Court's decision in **Commonwealth v. Waddell**, 61 A.3d 198 (Pa. Super. 2012), involves analogous facts and is instructive in our analysis of the issue of whether exigent circumstances existed here. In **Waddell**, the Homestead Borough Police Department received a tip conveyed by a neighboring police department that large quantities of marijuana were being distributed from a house in the Borough. **Id.** at 208. That tip was confirmed by another informant, and based upon information the informant disclosed, an arrest was made of individuals transporting 13 pounds of marijuana from the house. **Id.** Four officers then proceeded to the house to perform a "knock and talk." **Id.** at 209. The officers detected the odor of marijuana in the vicinity of the house, which grew stronger as they approached. **Id.** The

officers knocked three times at the door with no response, but they heard "slight movement" inside, which grew louder after the third knock. *Id.* An officer posted at the rear of the residence then observed the appellant attempting to jump out of a rear window, radioing this information to the officers at the front of the house. *Id.* Upon learning of the attempted escape, the officers at the front of the house kicked the front door open and entered the house, discovering two firearms and ten pounds of marijuana in plain view in the residence. *Id.* at 209-10.

This Court in *Waddell* reversed the trial court's denial of the motion to suppress, rejecting the claim of exigent circumstances based upon a concern of potential destruction of evidence or a danger to the safety of the officers. While we acknowledged that the officers had probable cause to conduct a search once they detected the smell of raw marijuana emanating from the house, we distinguished the facts from other cases where the police were in hot pursuit of a felon who retreated into a residence, noting that the residents of the house appeared to be unaware of the police activity before they knocked on the door. *Id.* at 215; *cf. Commonwealth v. Bostick*, 958 A.2d 543, 557-58 (Pa. Super. 2008) (exigent circumstances found where individual opened front door that was targeted for drug operation, saw an arrest in progress, uttered an expletive, and retreated inside, tossing items in vestibule in an apparent effort to conceal evidence); *Commonwealth v. Griffin*, 785 A.2d 501, 506 (Pa. Super. 2001) (suspect fleeing police into residence and displaying handgun during his retreat contributed to finding of exigent

circumstances). We concluded that the "officers lacked any specific evidence that anyone inside the home was armed," and any concern of a danger to the officers "was premised upon generalized experience with those that traffic in narcotics, not any particular evidence derived from the investigation in this case." *Waddell*, 61 A.3d at 215.

Related to the potential destruction of evidence, we noted that the mere detection of a noise indicating "hurried movement" inside the premises did not "provide a strong inference that evidence was being destroyed." *Id.* at 216. Additionally, we recognized that the concerns of the destruction of evidence were overstated based on the crime being investigated: "It does not take an expert to know that one cannot flush multiple pounds of marijuana down a toilet quickly, nor with the ease that one could flush heroin, cocaine, or other common controlled substances." *Id.* at 217. Moreover, in light of the fact that the officers present were adept at differentiating the scents of burnt and raw marijuana, there was no serious risk that "significant quantities of marijuana [could be] burned inside the home, particularly since windows at the house had been left open permitting the odor of raw marijuana to exude from the residence in the first place." *Id.* at 218.

Upon review and in light of our decision in *Waddell*, we agree with the trial court that the Commonwealth did not present sufficient evidence to justify the warrantless search on the basis of exigent circumstances. First, while the troopers clearly had reason to believe that marijuana was present inside the house based upon the smell emanating from the house, their fear that

evidence of the marijuana operation was being destroyed was not nearly so well-founded. The tip identified three individuals as being involved with the grow operation, Appellees, and all three had been detained prior to the troopers making the decision to enter the residence. While the troopers heard a noise from inside the house and one more car than the number of known individuals was observed at the property, the troopers only generally related that these noises conveyed a sense of "movement" and did not indicate that these noises were related to an act of destroying evidence. These observations only gave the troopers grounds to speculate whether another individual was present at the residence and did not provide any reason for the troopers to conclude that evidence was being destroyed. **See Commonwealth v. Mason**, 637 A.2d 251, 255 n.2 (Pa. 1993) ("[U]nless there is something more than suspicion that [] destruction of evidence may occur, the circumstances are not exigent.").

In addition, as in **Waddell**, the nature of the illicit operation being investigated cast doubt on the potential destruction of evidence as authorization for the warrantless entry. The tip that the troopers were acting upon indicated that there was a large-scale marijuana grow operation taking place at the property, and the extent of the operation was confirmed by the strong odor of marijuana emanating from the house. The risk that the evidence of such an operation could be destroyed is greatly reduced compared to the evidence of other crimes, including the manufacture of other controlled substances in pill or powder form. **See Waddell**, 61 A.3d at 217-18. To the

- 14 -

extent the troopers were concerned of the potential destruction of the marijuana by burning, Trooper Kezmarsky testified that he was well-trained in distinguishing the scents of raw and burned marijuana, N.T., 5/30/18 at 8-10, and he therefore would have been well equipped to detect whether any potential destruction of the marijuana occurred by burning. Furthermore, similar to **Waddell**, Trooper Hughes testified that a window in the front of the house was open and a screened door remained open after Appellees Criswell and Romesburg had exited, *id.* at 47-48, thus allowing the troopers ample opportunity to secure and monitor the house from the outside while they obtained a search warrant. **See Commonwealth v. English**, 839 A.2d 1136, 1142 (Pa. Super. 2003) (concluding that exigent circumstances did not justify warrantless seizure of marijuana plants, even though police claimed plants could be destroyed before search warrant could be procured, where officers could have secured the scene while a different officer obtained a warrant).

The Commonwealth also did not demonstrate that the troopers had knowledge of a potential threat to their safety inside the residence. Appellees Criswell and Romesburg were cooperative to the troopers, and indeed responded truthfully in the negative when asked whether anyone else was present at the house. No testimony was presented that any weapons were found on Appellees, and there also was no indication that the West Virginia tip included information that Appellees or anyone else with access to the property were armed or otherwise would present a danger to investigating troopers. As in **Waddell**, the troopers' concern regarding the potential destruction of

evidence appears to have been based upon "generalized experience" with drug trafficking cases rather than any "specific evidence" in this case.[5]  61 A.3d at 215; *see also Duke*, 2019 PA Super 115, *11 (stating that a "lack of knowledge of" an individual's intentions does create an exigency based on concern of officer safety and the officers "must observe some conduct or action on the part of [the individual] from which they could reasonably infer that [the individual] intended to harm them").  Thus, we conclude that exigent circumstances could not have been found based upon potential danger to the troopers.  *Compare Duke*, 2019 PA Super 115, *10-*11 (exigency could not be grounded on officers' concern that defendant who refused consent to search house would retreat to house to obtain a weapon where officers "had no basis on which to make this assumption") *with Commonwealth v. Coughlin*, 199 A.3d 401, 408-09 (Pa. Super. 2018) (*en banc*) (exigent circumstances existed for warrantless entry for warrantless sweep of home where officers responded to reports of suspect firing assault rifle in neighborhood known for gun violence and suspect gave inconsistent answers as to whether anyone else was inside home).

_____

[5] We recognize that *Waddell* is distinguishable from the instant case based upon the fact that, once the appellant in *Waddell* exited from the rear window, a fact that was communicated to the officers at the front of the house just prior to their warrantless entry, there was no reason to believe that anyone was present inside the house.  61 A.3d at 215.  However, we are not convinced that this factor alone tips the balance of factors in favor of finding exigent circumstances here.

- 16 -

Certainly, other factors related to the presence of exigent circumstances elaborated in **Roland** were present in this case. As the trial court noted, the troopers clearly had probable cause to obtain a search warrant for the property based upon the tip from the West Virginia informant and their detection of the smell of marijuana coming from the house. The criminal offense at issue involving the manufacture of large quantities of marijuana is also undoubtedly a serious one. Furthermore, the warrantless entry to the residence was not made with force, and it occurred during daylight hours, rather than at night when a warrantless search would have been more intrusive.[6] N.T., 5/30/18, at 56-57. Nevertheless, these factors tilting in favor of exigent circumstances must be weighed against factors that detracted from the urgent need to make entry, including the fact that all of the identified suspects related to the drug operation had already been apprehended, none of the individuals the troopers encountered had attempted to flee, there was no reason to believe that anyone present at the property was armed or posed a danger to the troopers, and the nebulous concern that evidence was being destroyed. The trial court did not err in balan+cing these factors in favor of Appellees.

_____

[6] In **Commonwealth v. Williams**, 396 A.2d 1177 (Pa. 1978), our Supreme Court noted that the time of day "works in more than one direction" as the late hour in which the incident occurs may also provide justification for warrantless entry based upon the potential delay in or impracticability of obtaining a warrant. **Id.** at 1180 (citation omitted); **see also Griffin**, 785 A.2d at 506 (fact that warrantless entry was made at night when "the prospect of securing the house pending a warrant [was] too dangerous given the cover that nightfall could have given the armed conspirators" weighed in favor of finding of exigent circumstances).

In its second appellate issue, the Commonwealth argues that, even if the warrantless entry to the residence was not justified through exigent circumstances, the evidence on the property would have inevitably been discovered when the troopers executed a search warrant. The Commonwealth asserts that the troopers' detection of a strong odor emanating from the residence provided a basis for applying for the search warrant that was entirely independent of any of the marijuana plants, bagged marijuana and grow equipment that Trooper Kezmarsky and Corporal Callas viewed during their warrantless entry. The Commonwealth contends that the troopers would have still obtained a search warrant even if the troopers had never decided to enter the residence, and the trial court therefore erred in granting the suppression motion.

Evidence that is obtained by law enforcement through an unlawful search may not be used in any respect, including as evidence against the subject of the search at trial. *Fulton*, 179 A.3d at 489. Such evidence may only be used against a defendant if knowledge of the evidence is gained from an independent source or if the evidence in question would inevitably have been discovered without reference to the police error or misconduct. *Id.* at 489-90. The Commonwealth bears the burden of proof at a suppression hearing to establish by a preponderance of the evidence that the evidence illegally obtained would have ultimately or inevitably been discovered by legal means. *Id.* at 490.

In **Commonwealth v. Berkheimer**, 57 A.3d 171 (Pa. Super. 2012) (*en banc*), an *en banc* panel of this Court reviewed the development of the inevitable discovery doctrine in Pennsylvania, explaining that Pennsylvania courts have interpreted the doctrine more narrowly based on the understanding that the exclusionary role serves an essential role in safeguarding the right to privacy under Article I, Section 8. **Id.** at 181-88; **see also, e.g.**, **Mason**, 637 A.2d at 256. This Court explained that in cases where evidence is gathered through "a substantially unwitting violation of the warrant requirement, devoid of any cognizable misconduct," the inevitable discovery doctrine in Pennsylvania is coterminous with its application under the Fourth Amendment. **Berkheimer**, 57 A.3d at 188. This standard requires a finding that the law enforcement officers' decision to seek a warrant was prompted by information independent of what was learned during the unlawful entry and that the information illegally obtained did not influence the magistrate's issuance of the search warrant. **Id.** at 184 (citing **Murray v. United States**, 487 U.S. 533, 543-44).

On the other hand, in cases "where misconduct by law enforcement officers is apparent, negating the warrant requirement and violating the constitutional right to privacy," the higher standard under Article I, Section 8 applies. **Id.** at 187-88. In such cases, suppression of the evidence can only be avoided where the information that forms the basis of the warrant is "truly independent from both the tainted evidence and the police or investigative team which engaged in the misconduct by which the tainted evidence was

discovered." *Id.* at 186-88 (quoting ***Commonwealth v. Melendez,*** 676 A.2d 226, 231 (Pa. 1996)) (emphasis omitted); ***see also Commonwealth v. Perel***, 107 A.3d 185, 195 (Pa. Super. 2014). As this Court later emphasized, the doctrine of inevitable discovery does not operate "as an invitation for appellate courts to overlook patently unconstitutional searches whenever the police *could* have complied with the Constitution's warrant requirement, but instead consciously disregarded it." ***Perel***, 107 A.3d at 195 (emphasis in original).

In ***Berkheimer***, police officers received a tip that an individual who was wanted on a probation detainer was residing at the house of the defendants. 57 A.3d at 174. When they arrived at the door, the officers banged on the door for two or three seconds and then entered the house after detecting the smell of burnt marijuana drifting outside. *Id.* at 174-75. The officers then announced their intention to secure the house while they obtained a search warrant based on the marijuana smell. *Id.* at 175. While removing the defendants, the officers observed a plastic bag and pill bottle containing marijuana, marijuana pipes, and several rounds of ammunition. *Id.* The officers then applied for a search warrant based in part upon the observation of the contraband they saw during their warrantless entry. *Id.* at 175, 189-90 & n.15.

The trial court recognized that the officers' initial warrantless entry was unlawful based on the absence of exigent circumstances, but denied a suppression motion on the basis that the officers had probable cause for the

issuance of a warrant prior to the initial entry based upon the smell of marijuana and therefore the evidence would have been inevitably discovered. *Id.* at 176-77. This Court disagreed, and reversed the convictions for the possession and manufacture of marijuana. First, the Court noted that, under applicable precedent, the officers' "entry of a private home in the absence of a warrant, on the pretext of circumstances that are not demonstrably exigent, poses a substantial invasion of privacy and [] constitute[s] police misconduct," necessitating the application of the heightened standard of the inevitable discovery rule under Pennsylvania Constitution. *Id.* at 188. Under that standard, the Court concluded that the Commonwealth could not show that the search warrant was premised on a truly independent source as the entry and the warrant application arose "from the concerted actions of a single group of officers." *Id.* at 188-90. The Court further determined that suppression would also be required under the more lenient Fourth Amendment inevitable discovery standard applicable in cases where no police misconduct is present because the application for the search warrant was premised upon the officers' observations during their initial entry, obviating the possibility that the magistrate who issued the warrant had an independent source for the issuance of the warrant. *Id.* at 189-90.

The failure of the inevitable discovery doctrine to overcome the exclusionary rule's protection of the essential privacy rights embedded in Article I, Section 8, naturally follows from our prior decision in *Berkheimer*. In this case, as in *Berkheimer*, the troopers had probable cause to obtain a

search warrant based upon the detection of the marijuana smell prior to their warrantless entry of the residence. However, despite the presence of probable cause and the opportunity to obtain a search warrant for the premises, the troopers made a warrantless entry to the residence. This warrantless entry triggered the heightened standard under Article I, Section 8 of the Pennsylvania Constitution. In both this case and *Berkheimer*, there was only a single law enforcement investigative team involved in the case. Therefore, it was impossible to show a "truly independent source" that would have led to the inevitable discovery of the contraband. Moreover, like in *Berkheimer*, the troopers' search warrant incorporated information gathered from their warrantless entry precluding invocation of inevitable discovery as an exception to the exclusionary rule even assuming the less onerous Fourth Amendment version of that standard applied in this case.

We next address the Commonwealth's argument the evidence collected from the detached shed behind the house, including approximately 50 live marijuana plants and marijuana growing equipment, should not have been suppressed because the troopers obtained a search warrant prior to entering the shed. This argument was not raised in the Commonwealth's Pa.R.A.P. 1925(b) statement of errors complained of on appeal nor is it raised in the statement of questions presented section of the Commonwealth's brief; accordingly, this argument is waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Proctor*, 156 A.3d 261, 267 (Pa. Super. 2017) ("[I]t is

well-settled that issues that are not set forth in an appellant's statement of matters complained of on appeal are deemed waived.") (citation, quotation marks, and brackets omitted); **Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (issue not set forth in or suggested by the statement of questions involved in an appellate brief is deemed waived under Pa.R.A.P. 2116(a)).

Even if not waived, however, this argument would fail. "The exclusionary remedy for illegal searches and seizures extends not only to the direct product of the illegality, the primary evidence, but also to the indirect product of the search or seizure, the secondary or derivative evidence." **Fulton**, 179 A.3d at 490 (citation omitted). The focus of the inquiry as to whether the challenged evidence constitutes "fruit of the poisonous tree" is whether such evidence was obtained via exploitation of the initial illegality. **Id.**; **Commonwealth v. Shabezz**, 166 A.3d 278, 289 (Pa. 2017). If the evidence is a product of the initial illegality, it "may nonetheless be usable and admissible if the connection between the information obtained was sufficiently attenuated from the illegal search, thus removing the taint of the original illegality." **Fulton**, 179 A.3d at 490. The "traditional circumstances that have been found to purge the taint of an unconstitutional act" include "attenuation, inevitable discovery, independent source, or some other intervening act or event." **Shabezz**, 166 A.3d at 290.

In this case, there is no doubt that the search of the shed was the fruit of the earlier warrantless search of the residence as the search of the shed

- 23 -

occurred on the same day, directly following the warrantless search of the residence. For the same reasons as described above, the inevitable discovery doctrine is unavailing to the Commonwealth because no truly independent source of information was shown for the search of the shed and the troopers' observations of the contraband detected during the warrantless search of the house was incorporated into the affidavit of probable cause for the search warrant for the shed. Furthermore, no evidence was presented to the trial court of any intervening event or other attenuating factor following the unconstitutional entry of the residence that would serve to purge the taint of illegality from the later search of the shed.

Based upon the foregoing, we conclude that the trial court properly granted the motions to suppress the evidence gathered at the Smithfield property and dismissed the criminal charges against Appellees that were based on the evidence collected. The Commonwealth's final appellate issue related to the trial court's ruling that the Commonwealth did not present a *prima facie* case as to the charges of dealing in proceeds of unlawful activities. However, as we have already ruled that the evidence underlying these charges was properly excluded, we need not address this portion of the trial court's November 7, 2018 order in this decision.[7]

Order affirmed.

---

[7] The Commonwealth recognized in its appellate brief that its third appellate issue only applied if it was meritorious in its claim challenging the grant of Appellees' motions to suppress. Commonwealth's Brief at 23.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/12/2019